# In re K-V-D-, Respondent

*Decided December 10, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where a circuit court of appeals has interpreted the definition of an "aggravated felony" under section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1994), only for purposes of criminal sentence enhancement, the Board of Immigration Appeals may interpret the phrase differently for purposes of implementing the immigration laws in cases arising within that circuit.

(2) An alien convicted in Texas of simple possession of a controlled substance, which would be a felony under Texas law but a misdemeanor under federal law, is not convicted of an aggravated felony within the meaning of section 101(a)(43)(B) of the Act. *Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995), affirmed.

Lisa Brodyaga, Esquire, Harlingen, Texas, for respondent

John W. McPhail, Assistant District Counsel, and Julia K. Doig, Chief Appellate Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HOLMES, HURWITZ, VILLAGELIU, ROSENBERG, GUENDELSBERGER, GRANT, and MILLER, Board Members. Dissenting Opinion: FILPPU, Board Member, joined by SCIALABBA, Vice Chairman; VACCA, HEILMAN, COLE, MATHON, JONES, and MOSCATO, Board Members.

ROSENBERG, Board Member:

In a decision dated October 13, 1998, the Immigration Judge found the respondent subject to removal from the United States pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien convicted of an aggravated felony as defined in section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (1994), and pursuant to section 237(a)(2)(B)(i) of the Act, as an alien convicted of a controlled substance violation. On the basis of these findings, the Immigration Judge also found the respondent ineligible

1163

for any form of relief from removal. The respondent filed a timely appeal.[1]

The determination whether the respondent has been convicted of an aggravated felony turns on the applicability of the Board's decision in *Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995). In *Matter of L-G-,* we construed the phrase "drug trafficking crime (as defined in section 924(c)(2) of title 18, United States Code)" in section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (Supp. V 1993), to require that, for immigration purposes, a state felony conviction involving a controlled substance violation must be for a crime that would be punishable as a felony under federal law.

In concluding that the respondent's state felony conviction for the crime of simple possession of a controlled substance constituted an aggravated felony for immigration purposes and rendered the respondent removable as charged, the Immigration Judge did not follow our precedent in *Matter of L-G-, supra.* Instead, he relied on the decisions of the United States Court of Appeals for the Fifth Circuit in *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), and *United States v. Reyna-Espinosa*, 117 F.3d 826 (5th Cir. 1997). In those cases, the Fifth Circuit interpreted the language in section 101(a)(43) of the Act for purposes of criminal sentence enhancement under the United States Sentencing Guidelines ("U.S.S.G.")[2] to cover any state felony that is punishable under the Controlled Substances Act, 21 U.S.C. § 801 (1994).

Upon review, we conclude that the Fifth Circuit's decision in *United States v. Hinojosa-Lopez, supra*, relating to criminal sentence enhancement, does not control the determination whether the respondent has been convicted of an aggravated felony for immigration purposes. The parties agree that the decision does not address the interpretation of section 101(a)(43)(B) of the Act for immigration purposes and is not dispositive of the issue before us. The Second Circuit, which is the only federal circuit court of appeals to interpret the terms of section 101(a)(43)(B) of the Act, both for sentence enhancement purposes and for immigration law purposes, also agrees that different interpretations of this provision are appropriate in each context. *See Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996) (following

---

[1]The request to waive the appellate filing fee is hereby granted. 8 C.F.R. § 3.8(c) (1999).

[2]At the time of the Fifth Circuit's decisions, the definition of an aggravated felony set forth at section 101(a)(43) of the Act was incorporated by reference into the sentencing guidelines in U.S.S.G. § 2L1.2 at application note 7. *See* 18 U.S.C.A. ch. 2, § 2L1.2, appl. n.7 (West 1996). The application notes were subsequently revised to refer specifically to 8 U.S.C. § 1101(a)(43). *See* 18 U.S.C.A. ch. 2, § 2L1.2, appl. n.1 (West Supp. 1997). For additional history of the sentencing guidelines and the United States Sentencing Commission, see the Sentencing Reform Act of 1984, which was enacted as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1873, 1976, 1987, 2017 (codified at 28 U.S.C. §§ 991-998).

the Board's interpretation in *Matter of L-G-, supra,* in a deportation case, despite having adopted a different interpretation of the same language in the context of criminal sentence enhancement); *see also United States v. Pornes-Garcia*, 171 F.3d 142 (2d Cir.) (reaffirming the Second Circuit's differing interpretations for criminal sentence enhancement purposes and immigration purposes), *cert. denied*, 120 S. Ct. 191 (1999).

Accordingly, we hold that the rule in *Matter of L-G-, supra*, governs the disposition of the respondent's appeal. We find that the respondent's conviction for the crime of simple possession of a controlled substance, which would not be punishable as a felony under federal law, is not an aggravated felony conviction. Therefore, the respondent is not subject to removal or statutorily ineligible for relief from removal on that basis. The respondent's appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I. ISSUE

The principal issue before us is whether the respondent's state felony conviction for the crime of possession of a controlled substance, which would be punishable only as a misdemeanor under federal law, is a conviction for a "drug trafficking crime," constituting an "aggravated felony" for immigration purposes.[3] To resolve this issue, we must determine the effect of the Fifth Circuit's decision in *United States v. Hinojosa-Lopez, supra*—which holds that a Texas felony conviction for aggravated possession of marijuana is an aggravated felony for criminal sentence enhancement purposes—on our precedent decision in *Matter of L-G-, supra*.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of Vietnam, who was admitted to the United States in 1987 as a refugee. He has been a lawful permanent resident of the United States since September 22, 1987. On August 13, 1992, he pled guilty to the charge of simple possession of a controlled substance, to wit, less than 28 grams of cocaine, in violation of section 481.115 of the Texas Health and Safety Code Annotated. He was placed on probation, and adjudication was deferred.

---

[3]The Immigration Judge's finding that the respondent is subject to removal because he has been convicted of a violation of state law relating to a controlled substance under section 237(a)(2)(B)(i) of the Act is not contested.

On December 2, 1997, the respondent was sentenced to serve a term of imprisonment of 5 years based on his failure to report to his probation officer, a violation that nullified the deferred adjudication. According to the amount of controlled substance involved, the respondent's conviction is classified as a felony of the second degree under Texas law. *See* Tex. Health & Safety Code Ann. § 481.115(d) (West 1997).

The Immigration and Naturalization Service issued a Notice to Appear (Form I-862), in which it charged the respondent with being removable under section 237(a)(2)(B)(i) of the Act, as an alien who has been convicted of a violation of a law relating to a controlled substance. The Service also charged that the respondent was removable under section 237(a)(2)(A)(iii) of the Act, as an alien who had been convicted of an aggravated felony after his admission to the United States. On August 24, 1998, the Service filed the Notice to Appear with the Immigration Court.

In the removal proceedings that followed, the Immigration Judge concluded that the crime for which the respondent was convicted was an aggravated felony within the meaning of section 101(a)(43)(B) of the Act. Relying on the reasoning of the Fifth Circuit in *United States v. Hinojosa-Lopez, supra,* he found that the respondent was convicted of a crime analogous to a "drug trafficking crime (as described in section 924(c)(2) of title 18)," and that the conviction was for an aggravated felony because the crime was classified as a felony under state law. Based on the fact that the respondent received a sentence to a 5-year term of imprisonment for his conviction, the Immigration Judge concluded that he was ineligible for any forms of relief from removal. *See* sections 208(b)(2)(B)(i), 240A(a)(3), 241(b)(3)(B) of the Act, 8 U.S.C. §§ 1158(b)(2)(B)(i), 1229b(a)(3), 1231(b)(3)(B) (Supp. II 1996).

In his Notice of Appeal, the respondent challenged the Immigration Judge's finding that he was ineligible for relief from removal and requested an opportunity for oral argument before the Board. On September 10, 1999, a seven-member panel representing the full en banc Board convened and held oral argument. The respondent was represented by pro bono counsel obtained through the American Immigration Lawyers Association. The Service was represented by counsel from the Office of Appellate Counsel. In response to our request for supplementary briefing, the Board received briefs from both parties prior to oral argument.

At oral argument, both parties agreed that the Fifth Circuit's decision in *United States v. Hinojosa-Lopez* did not control the Board's disposition of the case. Nevertheless, the parties dispute the proper resolution of the issue presented in this case. In essence, the respondent argued that we should uphold our decision in *Matter of L-G-* in deciding his appeal. By contrast, the Service argued that we should reconsider and overturn our decision in *Matter of L-G-.*

In his supplementary brief and at oral argument, the respondent point-

ed out that the decision of the Fifth Circuit in *United States v. Hinojosa-Lopez* addressed the language appearing in both application note 7 of the sentencing guidelines and section 101(a)(43) of the Act only in relation to its meaning for purposes of implementing the sentencing guidelines that apply to federal criminal cases. The respondent emphasized that the court did not examine or interpret that statutory language for immigration purposes. The respondent urged us to recognize the rule of construction that, even when used in the same statute, a particular phrase can have different meanings when interpreted for different purposes.

The respondent also emphasized that the relevant precedent decisions issued by the Board over the past decade, beginning with *Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990) and *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), and culminating in *Matter of L-G-,* reflect legitimate policy concerns for national uniformity, which are appropriate in the context of administering the federal immigration laws. He argued that these concerns justify our reliance on a federal analogue to determine which state offenses may be deemed felony convictions for purposes of adjudicating removal charges based on section 101(a)(43)(B) of the Act. Finally, the respondent argued that Congress should be presumed to be aware of the Board's long-standing interpretation of the terms of section 101(a)(43)(B) of the Act; yet Congress took no action in its recent comprehensive revisions of the Act to amend that portion of the statute or to alter our interpretation.

Despite its agreement that the specific issue before us is not controlled by *United States v. Hinojosa-Lopez*, the Service urged us to affirm the decision of the Immigration Judge. At oral argument and in its supplementary brief, the Service argued that "you have to respect the designation of the crime provided by the states."

The Service renewed the argument that it had made previously when it asked us to reconsider our original decision in *Matter of L-G-,* 20 I&N Dec. 905 (BIA 1994) (finding a felony offense under Louisiana law not to constitute a felony under the federal drug laws). Notwithstanding our prior rejection of the Service's position in *Matter of L-G-,* the Service suggested that we rely on the Fifth Circuit's interpretation in *United States v. Hinojosa-Lopez,* pertaining to what constitutes a "drug trafficking crime" for criminal sentence enhancement purposes, to overturn our standing interpretation of the statutory language for immigration purposes. *See Matter of L-G-,* 21 I&N Dec. at 102; *Matter of Davis, supra; Matter of Barrett, supra.*

## III. INTERPRETATION OF SECTION 101(a)(43)(B) OF THE ACT

Section 101(a)(43)(B) of the Act defines an aggravated felony as "illicit trafficking in a controlled substance (as described in section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined

in section 924(c) of title 18, United States Code)." Consideration of the appeal before us warrants a brief review of the statute, the rationale on which we based our analysis in *Matter of L-G-,* and related precedent decisions.

## A. Interpretation for Immigration Purposes

In *Matter of L-G-,* 21 I&N Dec. at 96, we concluded that a conviction for simple possession of a controlled substance, which was classified as a felony under Louisiana state law and was not analogous in substance to a federal offense punishable under the Controlled Substances Act, did not constitute an aggravated felony. We reasoned that to constitute an aggravated felony under section 101(a)(43) of the Act, a state controlled substance conviction for an offense that had no demonstrated nexus to illicit trafficking in drugs, as that term is commonly defined, must be analogous to an offense defined in 18 U.S.C. § 924(c)(2) (1994), *and* must constitute a crime that would be considered a felony under federal law. *Id.* at 92, 96, *aff'g Matter of Davis, supra, Matter of Barrett, supra.* As the comparable federal offense, defined in 18 U.S.C. § 924(c)(2) (i.e., a single offense of simple possession of cocaine, not involving a mixture or substance containing more than 5 grams of cocaine base), was punishable under 21 U.S.C. § 844(a) only as a misdemeanor, and not as a felony, we held that the respondent's conviction was not for a "drug trafficking crime," as defined in 18 U.S.C. § 924(c)(2), and therefore did not constitute an "aggravated felony." *See Matter of L-G-,* 21 I&N Dec. at 96, 102; *see also* 18 U.S.C. § 3559 (1994) (differentiating felonies and misdemeanors).

Our holding in *Matter of L-G-* is based on the express language contained in section 101(a)(43) of the Act. It also reflects policy considerations that favor applying a uniform federal standard in adjudicating removability and determining the immigration consequences of a conviction under the Immigration and Nationality Act. We have followed this policy of uniformity in our recent decisions interpreting various provisions of the Act. *See Matter of L-G-,* 21 I&N Dec. at 93-96, 100-01; *see also Matter of Rodriguez-Rodriguez,* 22 I&N Dec. 991 (BIA 1999); *Matter of Roldan,* 22 I&N Dec. 512 (BIA 1999); *Matter of A-P-,* 22 I&N Dec. 468, at 475 n.6 (BIA 1999); *Matter of Punu*, Interim Decision 3364 (BIA 1998). Moreover, in the context of determining deportability for drug convictions, the Attorney General has long favored following federal standards, rather than relying on "the vagaries of state law." *Matter of A-F-,* 8 I&N Dec. 429, 446 (BIA, A.G. 1959).

In sum, according to our interpretation in *Matter of L-G-,* for immigration purposes, a state drug offense that is analogous to a drug trafficking crime under 18 U.S.C. § 924(c)(2) and is punishable as a felony under federal law will be deemed to constitute an aggravated felony under section 101(a)(43) of the Act. A state drug offense that is not analogous to a feder-

al felony will not be deemed to constitute an aggravated felony. As discussed below, we continue to believe that this is the proper interpretation of 18 U.S.C. § 924(c)(2) for immigration purposes.

## B. Interpretation for Sentence Enhancement Purposes

In *United States v. Hinojosa-Lopez* the Fifth Circuit addressed the phrase "aggravated felony" as applied in the context of the sentencing phase of a criminal prosecution. The defendant in that case, who previously had been deported based on a state felony conviction for a controlled substance violation, was convicted of unlawful reentry to the United States in violation of sections 276(a) and (b)(2) of the Act, 8 U.S.C. §§ 1326(a), (b)(2) (1994).[4] The issue before the Fifth Circuit was the propriety of a 16-point sentence enhancement under § 2L1.2(b)(2) of the United States Sentencing Guidelines (referring to a drug trafficking crime that constitutes an aggravated felony as defined in section 101(a)(43) of the Act).

The Fifth Circuit concluded that, for purposes of criminal sentence enhancement, a state drug conviction is properly deemed a "felony" if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a misdemeanor under federal law. *United States v. Hinojosa-Lopez, supra*, at 694 (citing *United States v. Restrepo-Aguilar*, 74 F.3d 361, 365 (1st Cir. 1996)). In reaching this conclusion, the Fifth Circuit considered the reasoning of other circuits that have addressed the language of section 101(a)(43) of the Act, relating to a "drug trafficking crime," as incorporated in the criminal sentencing guidelines for sentence enhancement purposes. *See* U.S.S.G. § 2L1.2(b)(2), appl. n.7; *United States v. Hinojosa-Lopez, supra*, at 694 (citing *United States v. Restrepo-Aguilar, supra; United States v. Briones-Mata*, 116 F.3d 308, 310 (8th Cir. 1997)); *see also United States v. Polanco*, 29 F.3d 35, 38 (2d Cir. 1994).

With the exception of the Second Circuit, whose decisions are discussed below, the other circuits that have interpreted the language found in section 101(a)(43)(B) of the Act in the criminal sentence enhancement context have

---

[4]The United States Sentencing Guidelines in U.S.S.G. § 2L1.2(b)(2) define an aggravated felony as follows:

"Aggravated felony," as used in subsection (b)(2), means . . . any illicit trafficking in any controlled substance (as defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2) . . . . The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law . . . .

18 U.S.C.A. ch.2, § 2L1.2(b)(2), appl. n.7 (West 1996).

not yet interpreted such language for immigration purposes. *See United States v. Pornes-Garcia, supra*. These other circuits followed one of two courses.

Some have qualified their interpretation of what constitutes a "drug trafficking crime" in the context of applying the sentencing guidelines, suggesting that a different interpretation might be appropriate for immigration purposes. *See United States v. Briones-Mata, supra*, at 309-10; *United States v. Restrepo-Aguilar, supra,* at 366. Some simply have not referred to the existence of the issue in the immigration context, or addressed the Board's decision in *Matter of L-G-,* at all. *See, e.g., United States v. Simon,* 168 F.3d 1271, 1272 (11th Cir.), *cert. denied,* 120 S. Ct. 114 (1999); *United States v. Garcia-Olmedo*, 112 F.3d 399, 400-01 (9th Cir. 1997); *United States v. Cabrera-Sosa,* 81 F.3d 998, 1000 (10th Cir.), *cert. denied*, 519 U.S. 885 (1996). The Fifth Circuit stands among those courts that have not addressed the interpretation of the term "drug trafficking crime" in the immigration context.

As discussed below, the Second Circuit is the only circuit to have addressed the relevant statutory language, both in the context of reviewing a criminal sentence enhancement determination and in the context of reviewing an adjudication of deportability for immigration purposes. The Second Circuit concluded explicitly that "decisions interpreting 'aggravated felony' in the sentencing context did not affect its interpretation of the same term in that case." *United States v. Pornes-Garcia, supra*, at 147 (citing *Aguirre v. INS, supra*, at 317 n.1).

### IV. ANALYSIS AND RESOLUTION OF THE APPEAL

We hold that the Fifth Circuit's decision in *United States v. Hinojosa-Lopez, supra,* does not require us to modify our well-established precedent, which holds that a state felony conviction for possession of a controlled substance that would be punishable as a misdemeanor under federal law is not an aggravated felony conviction for immigration purposes. We therefore affirm our decision in *Matter of L-G-*.

### A. Effect of the Fifth Circuit's Decision
### in *United States v. Hinojosa-Lopez*

We adhere to the principle that we are bound to acquiesce to the controlling decisions of the federal circuit courts of appeals.[5] *See Matter of K-*

---

[5]We note that in *Matter of L-G-* we expressly acquiesced to the then-controlling law of the Second Circuit, *Jenkins v. INS*, 32 F.3d 11 (2d Cir. 1994). *See United States v. Pornes-Garcia, supra*, at 146 ("The BIA expressly disagreed with our decision in *Jenkins*, and stated that it would follow our holding only in deportation and asylum cases arising in the Second Circuit.").

*S-*, 20 I&N Dec. 715, 719-20 (BIA 1993); *Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989). A federal agency is obligated to follow circuit precedent in cases originating within that circuit, and the appeal before us originates in the circuit in which *United States v. Hinojosa-Lopez* was decided. *See Singh v. Ilchert*, 63 F.3d 1501, 1508 (9th Cir. 1995) (citing *NLRB v. Ashkenazy Prop. Mgmt. Corp.,* 817 F.2d 74, 75 (9th Cir.), *cert. denied*, 501 U.S. 1217 (1987)).

However, in *United States v. Hinojosa-Lopez* the Fifth Circuit did not rule on whether the conviction at issue would constitute an aggravated felony for immigration purposes, as that was not the issue before the court. Rather, the Fifth Circuit exclusively addressed criminal sentence enhancement and did not determine the applicability of our precedent decision in *Matter of L-G-* in the context of immigration proceedings. While the Fifth Circuit looked to the Second Circuit's criminal sentence enhancement decision in *United States v. Polanco, supra*, it made no mention of the Second Circuit's opinion in *Aguirre v. INS, supra*, which interpreted the same language differently for immigration purposes. Thus, we agree with the parties that the Fifth Circuit's ruling in *Hinojosa-Lopez* is not determinative of the specific issue before us, as the Fifth Circuit has not yet addressed that issue.

Moreover, in *United States v. Hinojosa-Lopez* the Fifth Circuit gave significant weight to the First Circuit's decision in *United States v. Restrepo-Aguilar, supra*. The Fifth Circuit found the First Circuit's reasoning in "[l]ooking to the interaction between the Federal Sentencing Guidelines and the applicable federal statutes" to be persuasive in determining that the defendant's drug conviction was for an aggravated felony for sentencing guidelines purposes. *United States v. Hinojosa-Lopez, supra*, at 694. Significantly, in *United States v. Restrepo-Aguilar, supra,* the First Circuit stated:

> The recent decision of the Board of Immigration Appeals in *In Re L-G-* does not persuade us otherwise. The decision in *L-G-* did not involve any consideration of the aggravated felony sentence enhancement at issue here. At stake in *L-G-* was, instead, the petitioner's right to apply for asylum and request withholding of deportation . . . . To be sure, the decision turned on the definition of "aggravated felony" as set forth in 8 U.S.C. § 1101(a)(43), which, in relevant part, is the same as the definition provided in application note 7 to U.S.S.G. § 2L1.2, *but the relevant context was different*.

*United States v. Restrepo-Aguilar, supra*, at 366 (emphasis added) (citation omitted) (footnote omitted).

Likewise, the Eighth Circuit concluded that "*Aguirre* [involving a petition for review of a deportation order in which the Second Circuit followed *Matter of L-G-]* does not affect our interpretation of the [Sentencing] Guidelines." *United States v. Briones-Mata, supra*, at 309 n.2. Admittedly, neither the First Circuit nor the Eighth Circuit stated definitively that it would rule differently regarding the definition of the term "aggravated

felony" in the immigration context based on the differing purposes of the sentencing guidelines and federal immigration law. Nevertheless, the Fifth Circuit relied on the decisions of both circuits, each of which expressly recognized that the proper construction of the same language in a different context might affect its interpretation of section 101(a)(43)(B) of the Act for immigration purposes.

We also note that the Fifth Circuit has held that the classification of a crime as an aggravated felony for sentencing guidelines purposes is not dependent on whether that crime can be considered an aggravated felony for purposes of the immigration laws. *See, e.g., United States v. Garcia-Rico,* 46 F.3d 8 (5th Cir. 1995) (finding that a conviction for voluntary manslaughter occurring prior to the effective date in the immigration statute could be considered an aggravated felony for purposes of the sentencing guidelines), *cert. denied*, 515 U.S. 1150 (1995). In addition, while it has not yet ruled on an interpretation of section 101(a)(43)(B) of the Act for immigration purposes, the Fifth Circuit recognizes generally that different interpretations of the same term in different contexts may be appropriate. *See Strachan Shipping Co. v. Davis*, 571 F.2d 968 (5th Cir. 1978) (recognizing that a different meaning could be accorded the same word in a statute if the text indicates that a contrary meaning is appropriate); *Chapman v. Durkin,* 214 F.2d 360, 362 (5th Cir. 1954) (holding that "'we do not "make a fortress out of the dictionary" . . . by mechanically applying definitions in unintended contexts'" (quoting *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 764 (1949) (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945))).

Consequently, we find it reasonable to conclude that the Fifth Circuit's decision regarding what constitutes an aggravated felony in a sentencing enhancement context is separate and distinct from our determination of what the same term means for immigration purposes. We conclude that the Fifth Circuit's decision in *United States v. Hinojosa-Lopez* does not control our determination of the appeal before us.

## B. Reasonableness of a Uniform Application in the Immigration Context

The application of section 101(a)(43)(B) of the Act in the context of criminal sentence enhancement achieves a far different enforcement result from that achieved by application of this section of the statute in the immigration context. In the context of federal sentence enhancement, related to a conviction for reentry after a prior removal, what is being penalized criminally is recidivism. *Matter of L-G-,* 21 I&N Dec. at 98. Any prior conviction is relevant for purposes of enhancement. By contrast, in the immigration context, what is being sanctioned civilly is an existing violation of federal immigration law. A uniform application of federal sanctions related to

a particular criminal conviction is paramount in this context. *Id.*

As stated above, the Second Circuit is the only circuit to have addressed the question whether the term "felony," as used in section 101(a)(43)(B) of the Act, can have different meanings for purposes of different applications. The answer was a clear "yes." In particular, in *Aguirre v. INS, supra*, the Second Circuit specifically considered the policy goal of "national uniformity" in interpreting the federal immigration laws and upheld our interpretation in *Matter of L-G-*. The Second Circuit reached this result notwithstanding that the circuit already had reached a different interpretation for criminal sentence enhancement purposes in *United States v. Polanco, supra.*

In *Aguirre v. INS, supra*, the Second Circuit specifically declined to follow the First Circuit's reasoning in *United States v. Restrepo-Aguilar, supra*, which defined the term "aggravated felony" in the sentencing guidelines context. Even more telling, in *United States v. Pornes-Garcia, supra*, the Second Circuit followed its earlier decision in *United States v. Polanco, supra*, finding that the defendant's state drug conviction amounted to an aggravated felony for sentence enhancement purposes.

In *United States v. Pornes-Garcia, supra*, the Second Circuit was urged to reconsider its conclusion that disparate interpretations of the language in section 101(a)(43) of the Act relating to a "drug trafficking crime" were appropriate, depending on whether the language was being construed for criminal sentence enhancement purposes or for immigration purposes. The circuit court recognized that while a term used in different portions of a single act generally is construed as having the same meaning, exceptions to the general rule exist where the subject matter to which the words refer, the places they are used, or the conditions under which they are used are not the same. *See Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). Thus, the Second Circuit expressly concluded that the phrase "any felony" in 18 U.S.C. § 924(c)(2), which is found both in the sentencing guidelines and in section 101(a)(43)(B) of the Act, may be interpreted differently, according to whether it is being interpreted for purposes of applying the sentencing guidelines or enforcing the terms of the Immigration and Nationality Act. *United States v. Pornes-Garcia, supra*, at 147-48.

We find the reasoning of the Second Circuit in *United States v. Pornes-Garcia* persuasive. The Second Circuit's differentiation between the sentence enhancement and immigration contexts provides support for our existing interpretation of the statutory language regarding what constitutes a "drug trafficking crime" that is punishable as a felony for immigration purposes. Although *United States v. Pornes-Garcia* was decided after the Fifth Circuit issued its decision in *United States v. Hinojosa-Lopez*, the Fifth Circuit did not differ with the Second Circuit's earlier interpretation of the relevant language in *Aguirre v. INS, supra*, which formed the predicate

for the Second Circuit's decision in *United States v. Pornes-Garcia.*

We do not intend by this decision to suggest that the decisions of the federal courts of appeals in criminal sentence enhancement cases do not provide relevant and valuable guidelines that may inform our interpretation of the federal immigration laws in other circumstances. However, we have spoken consistently with regard to the question presently before us for nearly a decade. *Matter of L-G-,* 21 I&N Dec. 89; *Matter of Davis, supra.* Moreover, the only circuit court of appeals to have interpreted the relevant provision for immigration purposes agrees that whether a state conviction is considered an aggravated felony in relation to immigration consequences is best determined according to a uniform rule based on federal standards. *United States v. Pornes-Garcia, supra; Aguirre v. INS, supra.*

Our reasoning that the phrase "any felony" in 18 U.S.C. § 924(c) is not intended to include an offense that is classified by a state as a felony, unless it would constitute a felony under federal law, is entirely consistent with and meaningfully effectuates such uniformity. To hold otherwise would result in widely disparate consequences for similarly situated aliens based solely on differing state classifications of identical drug offenses.[6] We do not believe that such a result was intended by Congress. *See Matter of L-G-,* 21 I&N Dec. at 100.

Consequently, we conclude that, notwithstanding the interpretation set forth by the court in *United States v. Hinojosa-Lopez* in relation to sentence enhancement, *Matter of L-G-* remains good law. In the absence of any specific Fifth Circuit precedent requiring us to look to state law for the purpose of determining when a state drug conviction falls within the definition of an aggravated felony contained in section 101(a)(43)(B) for immigration purposes, we will continue to follow our precedent in *Matter of L-G-.*

Applying this conclusion to the instant matter, we find that the respondent's conviction for simple possession of cocaine under Texas law does not specifically indicate that he was in possession of more that 5 grams of "cocaine base." Therefore, we find that the respondent's conviction for simple possession of a controlled substance would constitute a misdemeanor under the federal law, and that the respondent was not convicted of an aggravated felony within the meaning of section 101(a)(43)(B) of the Act. Accordingly, the respondent is not subject to removal under section 237(a)(2)(A)(iii) and is not statutorily ineligible to seek the relief of cancellation of removal.

---

[6]As we noted in *Matter of L-G-, supra*, at 95-96, the disparate treatment that would result could be either beneficial or detrimental to the alien, depending on the state law involved. *See also Matter of L-G-,* 21 I&N Dec. at 105 (Holmes, concurring).

## V. CONCLUSION

Under *Matter of L-G-,* a controlled substance violation must be analogous to a felony as defined according to 18 U.S.C. § 3559 before it will fall within the class of offenses that are deemed to constitute "drug trafficking crimes" under section 101(a)(43)(B) of the Act. The Fifth Circuit's decision in *United States v. Hinojosa- Lopez* and the other sentence enhancement cases cited were not decided in the context of immigration proceedings, where a uniform federal approach is critical. Upon consideration of the distinctions between the immigration laws and the sentencing enhancement provisions at issue, we reaffirm the reasoning underlying our conclusions in *Matter of L-G-.*

We will sustain the respondent's appeal of the Immigration Judge's finding that he was convicted of an aggravated felony within the meaning of section 101(a)(43)(B) of the Act. Therefore, we do not find that the respondent is statutorily ineligible for relief from removal on that basis. Accordingly, we will remand the record to the Immigration Judge for consideration of any applicable forms of relief.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.

*DISSENTING OPINION:* Lauri Steven Filppu, Board Member, in which Lori L. Scialabba, Vice Chairman; Fred W. Vacca, Michael J. Heilman, Patricia A. Cole, Philemina M. Jones, Lauren R. Mathon, and Anthony C. Moscato, Board Members, joined

I respectfully dissent because I consider the decision of the United States Court of Appeals for the Fifth Circuit in *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), to be controlling precedent.[1]

This case turns on the meaning of a criminal statute, 18 U.S.C. § 924(c)(2) (1994), defining a "drug trafficking crime" for criminal law purposes. This controlling criminal statute has been directly cross-referenced in the definition of an "aggravated felony" in the immigration laws. Section

---

[1]A number of courts agree with the statutory analysis contained in *Hinojosa-Lopez*. *United States v. Pornes-Garcia*, 171 F.3d 142 (2d Cir.), *cert. denied*, 120 S. Ct. 191 (1999); *United States v. Simon*, 168 F.3d 1271 (11th Cir.), *cert. denied*, 120 S. Ct. 114 (1999); *United States v. Briones-Mata*, 116 F.3d 308 (8th Cir. 1997); *United States v. Cabrera-Sosa*, 81 F.3d 998 (10th Cir.), *cert. denied*, 519 U.S. 885 (1996); *United States v. Restrepo-Aguilar*, 74 F.3d 361 (1st Cir. 1996). The United States Court of Appeals for the Ninth Circuit, however, does not. *See United States v. Zarate-Martinez*, 133 F.3d 1194 (9th Cir.), *cert. denied*, 119 S. Ct. 123 (1998); *United States v. Garcia-Olmedo*, 112 F.3d 399 (9th Cir. 1997).

101(a)(43)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B) (1994). This cross-referenced criminal statute is the same one that was authoritatively construed in *United States v. Hinojosa-Lopez, supra*. The ruling in *Hinojosa-Lopez* is controlling precedent, notwithstanding the Immigration and Naturalization Service's position, because the relevant "aggravated felony" definition requires us to apply the criminal law and *Hinojosa-Lopez* specifies the meaning of the critical criminal law for cases arising in the Fifth Circuit.

This is *not* a case where similar or identical statutory language appears in two provisions and can be assigned different meanings because of different contexts. Rather, this is a case where the court in *Hinojosa-Lopez* construed the identical, cross-referenced statute that we are required to apply. Nevertheless, the majority refuses to follow the criminal law meaning of this cross-referenced federal criminal statute, as set forth by the governing federal court charged with applying federal criminal law. In so doing, the majority disregards and defeats the very purpose behind legislation employing cross-referenced provisions. The majority fails to explain why Congress directed us to apply a federal criminal statute in the enforcement of the immigration laws if it did not expect us to apply the meaning the statute has in criminal law.

## I. THE FACTS AND THE ISSUE

The respondent, a lawful permanent resident since 1987, has one criminal conviction. In 1997, he pled guilty in Texas to possession of cocaine and was sentenced to 5 years' imprisonment. His offense is a felony in Texas. *See* Tex. Health & Safety Code Ann. § 481.115(d) (West 1997). It would have been a misdemeanor under corresponding federal law. *See* 21 U.S.C. § 844(a) (1994) (providing that a first offense for simple possession of a controlled substance is a federal misdemeanor, except when it involves more than 5 grams of a mixture or substance containing "cocaine base").

The Immigration Judge denied all requests for relief after finding the respondent subject to removal, both as an alien convicted of a controlled substance violation pursuant to section 237(a)(2)(B)(i) of the Act, 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. II 1996), and as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act. On appeal, the respondent only contests the "aggravated felony" determination and the denial of relief.

The issue in dispute is whether a conviction for a state law drug *felony* amounts to a conviction for an "aggravated felony" under section 101(a)(43)(B) of the Act, when the offense would only have been a *misdemeanor* under federal criminal law. The reading we gave to the pertinent statutory language in *Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995), conflicts

with the reading given by the Fifth Circuit in *United States v. Hinojosa-Lopez, supra.*

The resolution of this issue depends on whether we apply the interpretation of criminal law set forth in *Matter of L-G-* or the one contained in *Hinojosa-Lopez* to cases arising within the Fifth Circuit. This Board has historically followed the decisions of a circuit court in cases arising in that particular circuit. *See Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989); *accord Matter of Punu*, 22 I&N Dec. 224 (1998). Moreover, the federal courts are the ultimate interpreters of federal criminal law, including what constitutes a drug trafficking crime under 18 U.S.C. § 924(c)(2).[2]

## II. THE MAJORITY'S RULING

The majority asserts that there is a difference in the meaning of a "drug trafficking crime" as it applies for "immigration purposes" and for "criminal sentence enhancement purposes." It arrives at this conclusion *not* by any examination of the statutory language and the contexts in which it is used, but rather by reference to Second Circuit case law (which supports dual constructions), to *Matter of L-G-* itself, and to the policy considerations that have been discussed in both *Matter of L-G-* and the Second Circuit's decisions. It is necessary for the majority to avoid any meaningful focus on the language of the statute and the context in which that language is used, because the statute actually forecloses the majority's policy-oriented result.

The majority does, however, acknowledge two important points. First, the majority admits that the Fifth Circuit in *United States v. Hinojosa-Lopez* interpreted the identical provision that is before us, namely, section 101(a)(43) of the Act. *Matter of K-V-D-,* Interim Decision 1163, at 1164 (BIA 1999). The critical issue before us is the one that was resolved in *Hinojosa-Lopez*, specifically, the meaning of a "drug trafficking crime" as defined in 18 U.S.C. § 924(c)(2). In this respect, the majority also correctly notes that the substantive language in the 1995 United States Sentencing Guidelines ("U.S.S.G.") that was before the court in *Hinojosa-Lopez* is the same as appears in the "aggravated felony" definition before us. *Matter of K-V-D-, supra*, at 1164 n.2, 1169 n.4.

Second, the majority states that its construction of the law is not simply a ruling that exempts certain aliens from being found deportable for

---

[2]It is not necessary to address whether to overrule *Matter of L-G-, supra,* as the Service requests, in order to resolve this case; simple adherence to circuit court precedent dictates the outcome.

aggravated felony convictions, but that it is a ruling resulting in both the beneficial and detrimental treatment of different aliens, depending on how the state law might impact their cases under either the approach contained in *Matter of L-G-* or the approach in *Hinojosa-Lopez. Matter of K-V-D-, supra,* at 1174 n.6. This is consistent with the Service's argument that we should revisit both *Matter of L-G-, supra*, and *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992), because an alien with two state misdemeanor drug convictions should *not*, in the Service's judgment, be deemed to have an aggravated felony conviction. *See United States v. Gomez-Ortiz*, 62 F.Supp.2d 508 (D.R.I. 1999) (finding that a Massachusetts misdemeanor conviction for possession with intent to distribute marijuana was not a "drug trafficking crime," because it was a misdemeanor under state law). In other words, certain aliens may be better off under the construction of the criminal law contained in *Hinojosa-Lopez*, such as those with two state misdemeanor convictions for simple drug possession.

### A. The Statute Does Not Permit Two Meanings of a "Drug Trafficking Crime"

The term "aggravated felony" includes "a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." Section 101(a)(43)(B) of the Act. A "drug trafficking crime" in 18 U.S.C. § 924(c)(2), in turn, includes "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)." The Controlled Substances Act further defines a "felony" to include "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13) (1994).

State drug offenses can be drug trafficking crimes, and hence aggravated felonies, by reference solely to the terms of section 101(a)(43)(B) and the cross-referenced criminal law provisions. Indeed, this case hinges on the meaning of "any felony" in the definition of a "drug trafficking crime" in 18 U.S.C. § 924(c)(2), as that is where the split lies between the criminal case law and our own administrative case law. Consequently, the proper inquiry for us is whether the meaning of a "drug trafficking crime" can vary depending on whether the issue arises in a criminal sentence enhancement case or a civil immigration case.

The answer is readily apparent. Section 101(a)(43)(B) of the Act plainly tells us to apply the criminal law meaning of a "drug trafficking crime," because it directs us to apply the criminal law definition in 18 U.S.C. § 924(c). The statutory cross-reference to a specific criminal law provision simply cannot be ignored or circumvented.

The fact that Congress cross-referenced a criminal statute into the immigration laws does not give the majority license to create an interpretation that is independent of the meaning the statute bears in the criminal law. On occasion, we may be called upon to apply an ambiguous cross-refer-

enced criminal provision before the criminal courts have cleared up the ambiguity. This is what happened, at least to a significant extent, when we decided *Matter of L-G-, supra.*

Once the criminal courts resolve the ambiguity, however, we are not free to adhere to a contrary interpretation merely because we developed the contrary reading first. By doing so, we are no longer applying the actual criminal law that the statutory cross-reference requires. Rather, we are applying a rule that we once, mistakenly, thought was the criminal law. Persisting in such a mistaken understanding of criminal law directly violates the statutory direction, contained in the cross-reference itself, that we apply the real criminal law.

The Fifth Circuit has clarified the ambiguity in 18 U.S.C. § 924(c)(2) for purposes of cases arising within that circuit. In other words, it has specified the meaning of the criminal law that is cross-referenced for our use in section 101(a)(43)(B). The whole purpose of the statutory cross-reference is defeated by the majority's refusal to apply the law that is cross-referenced.

The majority does not declare that *Hinojosa-Lopez* wrongly decided the meaning of federal criminal law. Most importantly, the majority does not contend that Congress actually enacted two versions of 18 U.S.C. § 924(c)(2), one for use in criminal sentencing cases and one for use in civil deportation and removal cases. Yet, the majority's ruling in effect means that there are two versions of 18 U.S.C. § 924(c)(2), the one Congress enacted in the criminal law and the one the majority prefers would have been enacted.

## B. The Distinction Between Sentencing and Immigration Cases Is Artificial

Following the lead of the Second Circuit, the majority rules that "the phrase 'any felony' in 18 U.S.C. § 924(c)(2) . . . may be interpreted differently, according to whether it is being interpreted for purposes of applying the sentencing guidelines or enforcing the terms of the Immigration and Nationality Act." *Matter of K-V-D-, supra*, at 1173. What the majority fails to explain is that there is no viable distinction between the sentencing guidelines and the Act for purposes of this case. In fact, the sentencing guidelines merely reflect and respond to the criminal provisions of the Immigration and Nationality Act itself.

The critical language of each statute of consequence, both civil and criminal, was enacted by the same Congress in the same piece of legislation, specifically, in the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181 ("ADAA"). The ADAA amended the definition of a "drug trafficking crime" in 18 U.S.C. § 924(c)(2) to appear as it does today. ADAA § 6212, 102 Stat. at 4360. The definition of an aggravated felony

1179

was first added to the Immigration and Nationality Act by the ADAA, and included "any drug trafficking crime as defined in section 924(c)(2) of title 18." ADAA § 7342, 102 Stat. at 4469-70. The aggravated felony ground of deportation was added to the Act. ADAA § 7344, 102 Stat. at 4470-71. Importantly, the ADAA added an enhanced criminal penalty provision to section 276 of the Act, 8 U.S.C. § 1326 (1994), to apply, for example, to an alien convicted of illegal reentry after deportation "whose deportation was subsequent to a conviction for commission of an aggravated felony." ADAA § 7345, 102 Stat. at 4471. This is the provision, as later amended, that led to the conviction and sentence in *United States v. Hinojosa-Lopez.*

Nothing in this original statutory scheme suggests that different substantive meanings of a "drug trafficking crime" or of an "aggravated felony" apply to the civil and criminal provisions of the immigration laws. While there have been subsequent amendments to the aggravated felony definition, to the grounds of deportation, and to the criminal penalty provisions of section 276(b) of the Act, the pertinent substantive language of the ADAA has been carried forward and appears today in all of these provisions. In this respect, the majority's reliance on *United States v. Garcia-Rico*, 46 F.3d 8 (5th Cir.), *cert. denied*, 515 U.S. 1150 (1995), to support its ruling is unfounded. That case involved an effective date issue, not different *substantive* meanings for the identical statutory provision.

Our decision in *Matter of A-A-*, 20 I&N Dec. 492 (BIA 1992), explains that different effective date provisions can result in different applications of a uniform "aggravated felony" definition. But in *Matter of A-A-,* we correctly understood that the same substantive definition applied to both the civil and criminal provisions of the Immigration and Nationality Act. *Id.* at 495-500. Indeed, the opening clause of section 101(a) of the Act mandates as much, as it specifies that the same definition is to be "used" throughout the "Act."

Consequently, the same "aggravated felony" definition applies both to the civil deportation provisions affecting the respondent here and to the criminal provisions of section 276 of the Act that led to the conviction and enhanced sentence for the alien in *Hinojosa-Lopez*. When Congress wanted different definitions of a term to apply to separate portions of the Act, it clearly so specified. *See* section 101(b)(1) of the Act (defining the term "child" for purposes of titles I and II of the Act); section 101(c)(1) of the Act (defining "child" for purposes of title III of the Act). The majority does not, and cannot, explain how it ignores the statutory command of section 101(a).

The court in *Hinojosa-Lopez* did address the aggravated felony definition contained in application note 7 to the United States Sentencing Guidelines, in U.S.S.G. § 2L1.2(b)(2). 18 U.S.C.A. ch. 2, § 2L1.2(b)(2), appl. n.7 (West 1996). However, that definition tracked in substance (and with very minor wording variation) the aggravated felony definition in section 101(a)(43) of the Act prior to its amendment by section 222 of the

Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222, 108 Stat. 4305, 4320 (enacted Oct. 25, 1994). Application note 7 in 1995 mirrored section 101(a)(43) because this part of the sentencing guidelines is based on section 276 of the Act. This is confirmed by amendments to the sentencing guidelines. Currently, application note 1 to U.S.S.G. § 2L1.2(b)(1) includes the following language: "'Aggravated felony' is defined at 8 U.S.C. § 1101(a)(43) without regard to the date of conviction of the aggravated felony." 18 U.S.C.A. ch. 2, § 2L1.2(b)(1), appl. n.1 (West 1997).

The overall structure of the Immigration and Nationality Act, the structure of the legislation that introduced these provisions (the ADAA), and the statutory source of the sentencing guidelines applied in *Hinojosa-Lopez* forecloses the argument that different substantive meanings can apply to the identical language of either a "drug trafficking crime" or an "aggravated felony," depending on context. For purposes of the case before us, there is no *substantive* difference between the 1995 sentencing guidelines and the statutory definition of an "aggravated felony," as is readily apparent from a comparison of application note 7 with section 101(a)(43) of the Act prior to its 1994 amendment. The majority is simply incorrect in suggesting that there is a distinction.

## C. Rules of Statutory Construction

The Supreme Court has stated that "[a] term appearing in several places in a statutory text is generally read the same way each time it appears" and that there is "even stronger cause to construe a *single* formulation . . . the same way each time it is called into play." *Ratzlaf v. United States,* 510 U.S. 135, 143 (1994). This rule of construction may yield if

> there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent. Where the subject matter to which the words refer is not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of the law, to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed.

*Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433 (1932); *see also Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860 (1986) (stating that the normal rule that identical words have the same meaning may be overcome if they "'are found in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent'" (quoting *Helvering v. Stockholms Enskilda Bank, 293* U.S. 84, 87 (1934))).

Congress cross-referenced a "drug trafficking crime" only once in the Immigration and Nationality Act, in section 101(a)(43)(B). Consequently, a "drug trafficking crime" cannot bear different meanings within the confines of section 101(a)(43)(B) itself. There can be no "variation" or different "purpose" in how a "drug trafficking crime" is used in "different parts of the act," within the meaning of *Atlantic Cleaners & Dyers, Inc. v. United States, supra*, as it is *not* used in different parts of the Act.

The term "aggravated felony" is used throughout the Act. But it is a defined term that carries the same meaning throughout the entire Act. *See INS v. Hector,* 479 U.S. 85, 90-91 (1986) (noting that the court could not adopt a "functional approach" to the meaning of the term "child" in the Act, when the statutory definition did not authorize such an approach); *Fiallo v. Bell,* 430 U.S. 787, 797-98 (1977) (stating that the court cannot substitute its policy preference for the line drawn by Congress in a statutory definition).

If this were not enough, it was also the same Congress in the same piece of legislation that enacted the various provisions pertaining to the issues before us. The ADAA reflects that Congress adopted a comprehensive scheme to deport aliens convicted of aggravated felonies, to bar them from certain forms of relief, and to enhance criminal penalties should they return without prior authorization. The principle that individual sections of a single statute should be construed together "certainly makes the most sense when the statutes were enacted by the same legislative body at the same time." *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972).

The majority's reliance on *Strachan Shipping Co. v. Davis*, 571 F.2d 968 (5th Cir. 1978), and *Chapman v. Durkin*, 214 F.2d 360 (5th Cir. 1954), is misplaced. These decisions are simply consistent with the general principle that different interpretations may be appropriate, if the text of the particular statute so indicates. The majority cannot properly rely on these Fifth Circuit decisions when it fails to examine the text of the statute and to explain why that text actually allows different readings of the identical provision.

### D. Reliance on Policy Considerations and Second Circuit Law

Both the majority and the respondent rely heavily on the Second Circuit, as it specifically allows conflicting interpretations. *Compare Aguirre v. INS,* 79 F.3d 315 (2d Cir. 1996) (abandoning contrary circuit precedent and following the reading of a "drug trafficking crime" set forth in *Matter of L-G-* in the deportation context) *with United States v. Pornes-Garcia,* 171 F.3d 142 (2d Cir.) (distinguishing *Aguirre* and returning to original circuit construction of a "drug trafficking crime" in the criminal

sentence enhancement context), *cert. denied*, 120 S. Ct. 191 (1999).[3]

The Second Circuit also cited *Atlantic Cleaners & Dyers, Inc.,* in making its distinction between criminal sentence enhancement cases and deportation cases. *United States v. Pornes-Garcia, supra.* In *Pornes-Garcia*, the court stated that its own concern "for uniform application of immigration laws and this country's commitment to providing asylum militated in favor of adopting the BIA's construction" in the deportation context, while its criminal sentencing interpretation of a drug trafficking crime accords with congressional intent. *Id.* at 147.

Neither the Second Circuit nor the majority, however, focuses on the language of the statute to demonstrate how a "drug trafficking crime" or an "aggravated felony" can be said to be used in different ways, such that different meanings can be ascribed in the criminal and civil deportation contexts. It is not clear how the Second Circuit's concern or our own concern for nationwide uniformity, or our nation's general commitment to providing asylum, is sufficient reason to depart from the intent of the statute, as gleaned from its language and the context in which it is employed.

The statute itself is the best source for ascertaining the impact of our nation's asylum laws. In this respect, both former section 208(d) of the Act, 8 U.S.C. § 1158(d) (1994), and current section 208(b)(2)(B)(i), 8 U.S.C. § 1158(b)(2)(B)(i) (Supp. II 1996), bar asylum to aliens convicted of aggravated felonies. Although this asylum bar was enacted subsequent to the ADAA, nothing in these asylum provisions indicates that the meaning of a "drug trafficking crime," or of an "aggravated felony" in general, is different for asylum applicants than it is for criminals convicted under section 276 of the Act.

The Second Circuit, the majority, and the respondent advance various policy concerns that support the reading given to the statute in *Matter of L-G-,* including the desirability of our adhering to our own past precedent. The Supreme Court, however, has said that policy considerations cannot override the meaning of statutory language, except to the extent that adherence to the text and structure of the statute would lead to a result so bizarre that Congress could not have intended it. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 188 (1994) (citing *Demarest v. Manspeaker*, 498 U.S. 184, 191 (1991)); *see also Fiallo v. Bell, supra,* at 798 (noting that a court cannot substitute its judgment for the pol-

---

[3]On the other hand, the majority's reliance on *United States v. Restrepo-Aguilar, supra*, and *United States v. Briones-Mata, supra*, is ambitious. Neither case supports the construction of the criminal law set forth in *Matter of L-G-* or declares that two interpretations might be proper. The First Circuit in *Restrepo-Aguilar* actually was critical of the reasoning in *Matter of L-G-,* and simply indicated that it need not decide whether the statute could, in principle, bear conflicting meanings.

icy adopted by Congress in a statutory definition). Neither the Second Circuit, the majority, nor the respondent explains how reference to state law classifications, as in *Hinojosa-Lopez*, leads to a result so bizarre that Congress could not have intended it.

The majority's fundamental error may lie in confusing different "policy" considerations with different "statutory contexts." The majority appears to have equated the two. Assessing whether identical language may be given different readings requires an examination of the statutory setting in which the language is used. The context is the statutory context, not the policy considerations that individual adjudicators believe appropriate. *Atlantic Cleaners & Dyers, Inc. v. United States, supra*, at 433 (stating that determining different purposes in the use of statutory language is "to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed").

The *statutory context* plainly tells us that the same meaning exists for the term "aggravated felony" throughout the Immigration and Nationality Act. The term does not have a different meaning depending on whether it is encountered in a provision affecting deportability, a provision affecting relief from removal, a provision affecting detention, or a provision affecting criminal sentencing, even though we may perceive different "policy" considerations that bear on each of these different statutory contexts.


### III. THE RESPONDENT'S SEPARATE CONTENTIONS

#### A. *Chevron* Deference

The respondent argues that it is permissible to have conflicting constructions of the same statute within a circuit by virtue of the decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 843 (1984). *Chevron*, however, stands for the more limited proposition that the courts should follow an agency's construction of ambiguous provisions in the statute the agency is charged with administering. *See, e.g., INS v. Aguirre-Aguirre*, 119 S. Ct. 1439, 1441 (1999) (stating that deference is owed where the court "confronted questions implicating 'an agency's construction of the statute which it administers'"). In such situations, *Chevron* means that the agency's reading of the statute is the one and only reading. *Chevron* does not stand for the principle that a single statutory provision may receive two conflicting interpretations, one being the agency's reading in cases arising through the agency's process and the other being a court's reading in cases coming first before the judiciary.

Importantly, any ambiguity here does not stem from the immigration laws. It arises from the language of 18 U.S.C. § 924(c), a federal criminal

law statute, not administered by any agency, but by the federal criminal courts. The determinative question in the respondent's case and in *Hinojosa-Lopez* is the meaning of "any felony" in § 924(c)(2). We construed the reference to "any felony" to be a reference to the classification of offenses in 18 U.S.C. § 3559(a) (1994). *Matter of L-G-, supra,* at 93-95. The Fifth Circuit in *Hinojosa-Lopez* construed it, in keeping with similar cases from other circuits, by reference to 21 U.S.C. § 802(13). Any effect of the penultimate sentence in section 101(a)(43) of the Act is merely reinforcing of, but not necessary to, the result reached in *Hinojosa-Lopez*, as § 802(13) specifically applies to offenses under state law.

Thus, this case turns on the resolution of strictly a criminal law ambiguity. An agency's interpretation of a criminal statute is not entitled to *Chevron* deference. In *Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990), the Supreme Court explained that *Chevron* deference did not extend to a judicially enforceable portion of a statute that the agency otherwise administered. The congressionally mandated role for the Department of Labor in administering the statute there did not "empower the Secretary to regulate the scope of the judicial power vested by the statute." *Id.* at 650. Quoting from *Federal Maritime Comm'n v. Seatrain Lines, Inc.,* 411 U.S. 726, 745 (1973), the Court further stated "'that an agency may not bootstrap itself into an area in which it has no jurisdiction.'" *Id.* The Board clearly has no jurisdiction over criminal cases, let alone cases dealing with sentence enhancements.

The Court in *Adams Fruit Co. v. Barrett, supra*, at 649-50, cited with approval the concurring opinion in *Crandon v. United States,* 494 U.S. 152 (1990) (Scalia, J., concurring in judgment). In *Crandon*, the concurring opinion stated that *Chevron* deference did not apply when the "law in question, a criminal statute, is not administered by any agency but by the courts." *Id.* at 177.

## B. Other Contentions

The respondent argues that Congress has approved the interpretation in *Matter of L-G-,* because it has legislated several times since issuance of that decision without expressing disagreement. The respondent notes that Congress expressed disapproval of some of our rulings in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), but did not object to *Matter of L-G-*.

The Supreme Court's analysis in *Almendarez-Torres v. United States,* 523 U.S. 224 (1998), disposes of this claim. In *Almendarez-Torres*, the Court ruled that section 276(b) of the Act, 8 U.S.C. § 1326(b) (1994), was a sentence enhancement provision. As explained earlier, both the "drug trafficking crime" language of section 101(a)(43) and the first version of the sentence

enhancement provisions of section 276(b) were introduced into the Act by the ADAA. In *Almendarez-Torres*, the Court declared that later immigration enactments, including the IIRIRA, did not provide a basis for determining how to construe the earlier enacted provisions of section 276(b).

> These later-enacted laws, however, are beside the point. They do not declare the meaning of earlier law. They do not seek to clarify an earlier enacted general term. They do not depend for their effectiveness upon clarification, or a change in the meaning of an earlier enacted statute. They do not reflect any direct focus by Congress upon the meaning of the earlier enacted provisions. Consequently, we do not find in them any forward looking legislative mandate, guidance, or direct suggestion about how courts should interpret the earlier provisions.

523 U.S. at 237 (citations omitted).

The respondent also contends that *United States v. Nippon Paper Industries Co.,* 109 F.3d 1 (1st Cir. 1997), supports the proposition that the exact same statute can be given different readings in the criminal and civil contexts. But, the majority in that decision stated: "Words may sometimes be chameleons, possessing different shades of meaning in different contexts, . . . but common sense suggests that courts should interpret the same language in the same section of the same statute uniformly, regardless of whether the impetus for interpretation is criminal or civil." *Id.* at 4 (citations omitted). Later, it declared that "[w]here, as here, . . . the text under consideration is not merely a duplicate appearing somewhere else in the statute, but is the original phrase in the original setting—the pressure escalates and the case for reading the language in a manner consonant with a prior Supreme Court interpretation is irresistible." *Id.* at 5.

The respondent also contests his removability as an alien convicted of an aggravated felony, even if we apply the Fifth Circuit's *Hinojosa-Lopez* interpretation, alleging an element of unfair retroactivity or "mousetrapping." This contention fails under the decisions in *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), and *Matter of Punu, supra*.

The respondent lastly seeks a remand to apply for relief under Article 3 of the Convention Against Torture. United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984). I would deny the remand request, as no evidence has been offered to support the claim.

## IV. CONCLUSION

Under Fifth Circuit law, the respondent's state felony conviction for the offense of possession of a controlled substance constitutes a conviction for

a drug trafficking crime as defined by 18 U.S.C. § 924(c)(2), resulting in it being deemed an aggravated felony conviction pursuant to section 101(a)(43)(B) of the Act. I would affirm the Immigration Judge's decision.