Rafael **GONZALES–GOMEZ,**
Petitioner,

v.

Deborah **ACHIM, Immigration & Customs Enforcement, Chicago Field Office Director, Respondent.**

No. 05 C 0189.

United States District Court,
N.D. Illinois,
Eastern Division.

April 11, 2005.

Rafael Gonzalez–Gomez, Elgin, IL, pro se.

AUSA, Sheila McNulty, United States Attorney's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Presently before us is Rafael Gonzales–Gomez's petition for a writ of habeas corpus. Following its decision in *Yanez–Garcia v. Ashcroft*, 388 F.3d 280 (7th Cir. 2004), the Seventh Circuit Court of Appeals transferred his petition for review of the Board of Immigration Appeal's ("BIA") deportation decision to our court to be considered as a petition for writ of habeas corpus. For the reasons stated below, we grant Gonzales–Gomez's petition.

## FACTUAL BACKGROUND

Petitioner Gonzales–Gomez entered the United States from Mexico without inspection in January 1989 and became a lawful permanent resident of the United States on September 12, 1995. On November 29, 2000, Gonzales–Gomez was convicted of unlawful possession of a controlled substance, namely cocaine. Under Illinois law, Gonzales–Gomez's drug conviction for unlawful possession is classified as a felony. *See* 720 ILCS 570/402(a).

On February 12, 2001, the Immigration and Naturalization Service ("INS"), now the Department of Homeland Security, Immigration and Customs Enforcement, charged Gonzales–Gomez with deportability, for having been convicted of a violation related to a controlled substance. *See* 8 U.S.C. § 1227(a)(2)(B)(i). Subsequently, the INS added an additional charge, alleging that Gonzales–Gomez was also deportable for having been convicted of an "aggravated felony" based upon the Illinois felony conviction. 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable . . ."); 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include "a drug trafficking crime (as defined in section 924(c) of Title 18)"). After hearings on his case, the immigration judge found that Gonzales–Gomez had been convicted of unlawful possession of a controlled substance and, therefore, was subject to deportation. The judge also found that following the BIA's decision in *In re Yanez–Garcia*, 2002 WL 993589, 23 I & N Dec. 390 (BIA 2002), Gonzales–Gomez's state drug conviction is considered a drug trafficking crime, as defined in section 924(c) of Title 18, and, therefore, an aggravated felony. Accord-

ingly, the immigration judge found that Gonzales–Gomez was ineligible to apply for relief from removal. *See* 8 U.S.C. § 1229b(a)(3) (allowing certain permanent residents to apply for relief from removal, but excluding those who have been convicted of an "aggravated felony").

Gonzales–Gomez filed a timely notice of appeal to the BIA, which affirmed the decision of the immigration judge without opinion. Gonzales–Gomez then filed an appeal to the Seventh Circuit, which issued an order transferring the case to our court in light of their recent decision in *Yanez–Garcia v. Ashcroft*, 388 F.3d 280 (7th Cir.2004) (holding that a circuit court does not have jurisdiction to determine on a petition for review whether a state law felony drug possession conviction is an "aggravated felony," rendering an alien ineligible for cancellation of removal on a petition for review, and transferring the case to the district court where jurisdiction exists in a petition for writ of habeas corpus).

The basis of Gonzales–Gomez's challenge on appeal to the Seventh Circuit, and now as transferred to our court for consideration as a petition for habeas corpus, concerns the proper interpretation of the term "aggravated felony," as it is used and defined in several interrelated provisions of the Immigration and Nationality Act ("INA") and federal criminal statutes.

## STANDARD OF REVIEW

As a general matter, we give deference to the BIA in its administration of the INA because Congress has delegated authority to the BIA to administer that Act. *See In re Yanez–Garcia*, 23 I & N Dec. at 396. However, in this case, the definition of the term "aggravated felony" turns on the interpretation of 18 U.S.C. § 924(c)(2), a provision of the federal criminal law and not of immigration law. *See id.* Thus, the BIA's reading of section 924(c)(2) is not

entitled to deference but rather, is a legal question that we review de novo. *See id.* at 396–97 ("[B]ecause the meaning of the phrase 'drug trafficking crime' in 18 U.S.C. § 924(c)(2) is a matter of federal criminal law ... courts need not defer to our reading ..."); *Cazarez–Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir.2004) ("Whether an offense is an aggravated felony under the INA is a legal question subject to de novo review.")

## ANALYSIS

Under the INA, certain permanent residents who are subject to deportation may apply for cancellation of removal; however, they may not do so if convicted of an "aggravated felony." 8 U.S.C. § 1229b(a)(3). In Gonzales–Gomez's case, the immigration judge found his Illinois state conviction for drug possession to be an "aggravated felony," and thus, Gonzales–Gomez was not allowed to apply for cancellation of removal. Gonzales–Gomez argues that because his crime would be punishable only as a misdemeanor under federal law, his Illinois conviction should not be considered an aggravated felony. If Gonzales–Gomez's Illinois state felony conviction for drug possession is not properly considered an "aggravated felony," the immigration judge should have allowed him to apply for cancellation of removal and considered such eligibility in his deportation proceedings. Thus, the principal question to be decided on Gonzales–Gomez's habeas petition is whether a permanent resident's conviction for drug possession, which is considered a felony under the convicting state's law, but which would have been a misdemeanor if prosecuted under federal law, is an "aggravated felony" under the INA, which renders him ineligible for cancellation of removal.

## A. Relevant Statutory Provisions

As mentioned above, the INA provides that a permanent resident who has "been convicted of any aggravated felony" is not eligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). Under Section 101 of the INA, the term "aggravated felony" includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43)(B). It is undisputed that a simple drug possession does not constitute "illicit trafficking in a controlled substance," as that language is interpreted in the first part of Section 101 of the INA cited above. Thus, we are only concerned with the second part of Section 101, which includes a "drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c) of Title 18, in turn, defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App.1901 et seq.)." 18 U.S.C. § 924(c)(2).

For our purposes, the only relevant statute of the three referenced in section 924(c) is the Controlled Substances Act ("CSA"). One definitional provision of the CSA defines "felony," "as used in this subchapter," as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13). A separate provision in the federal criminal law outlines the federal sentencing scheme, providing that an offense punishable by up to a year of imprisonment is defined as a federal misdemeanor, whereas a crime subject to a prison sentence of more than one year is defined as a felony. 18 U.S.C. § 3559(a). The CSA punishes a first-time simple possession of a controlled substance, except for more than five grams of cocaine base or any quantity of flunitrazepam, by a term of imprisonment of not more than one year, or a fine of at least $1,000, or both. 21 U.S.C. § 844(a).

The immigration judge and the BIA determined that, following its decision in *In re Yanez–Garcia*, 2002 WL 993589, 23 I & N Dec. 390, Gonzales–Gomez's Illinois state drug conviction is an "aggravated felony" under the INA because the conviction is characterized as a felony under the law of the convicting state, Illinois, and the conduct underlying the conviction is punishable under the CSA, albeit as a misdemeanor. Gonzales–Gomez contends that the immigration judge and the BIA's interpretation of the relevant provisions was in error.

## B. Precedent

### 1. Hypothetical Federal Felony Approach

Beginning with its 1990 decision in *Matter of Barrett*, 1990 WL 385754, 20 I & N Dec. 171 (BIA 1990), and until 2002, the BIA interpreted "aggravated felony" for immigration purposes to include state drug offenses, but only if they would be punishable as felonies under the federal drug laws or contained a trafficking element. *See Matter of K–V–D*, 1999 WL 1186808, 22 I & N Dec. 1163 (BIA 1999); *In re L–G–*, 1995 WL 582051, 21 I & N Dec. 89 (BIA 1995); *Matter of Davis*, 1992 WL 443920, 20 I & N Dec. 536 (BIA 1992). In *Barrett*, the BIA first addressed the question of whether a state conviction for a drug-related offense that did not contain a trafficking element could constitute a drug trafficking crime and, therefore, an "aggravated felony" under the INA. 1990 WL 385754, 20 I & N Dec. at 173. Rejecting the defendant's argument that the "aggravated felony" provision in the INA referred only to felony convictions obtained under federal law, the BIA adopted what

has since been termed the "Hypothetical Federal Felony" approach for drug offenses that do not contain a trafficking element. *Id.* at 178. Under the Hypothetical Federal Felony approach, a state drug conviction is considered an "aggravated felony" if the elements of the crime resulting in conviction would render the defendant liable for a felony under the federal drug laws, irrespective of whether the conviction was actually obtained in the state or federal forum. *Id.*

For a long period of time, the BIA consistently applied the Hypothetical Federal Felony approach to drug-related convictions to determine whether a defendant had committed an "aggravated felony," without regard to how state law labeled the crime. In *Matter of Davis,* for example, the BIA addressed a defendant's state misdemeanor conviction for conspiracy to distribute a controlled substance and found that the federal analog was an aggravated felony as a conspiracy to participate in illicit trafficking. 1992 WL 443920, 20 I & N Dec. at 545. In *In re L–G,* the BIA was faced with the particular question we address today concerning the appropriate treatment of a state felony conviction for a simple drug possession. 1995 WL 582051, 21 I & N Dec. at 92. The BIA again applied the Hypothetical Federal Felony approach and found that because a first-time simple possession of a controlled substance, other than cocaine base and flunitrazepam, is punishable only as a misdemeanor under federal law, *see* 21 U.S.C. § 844(a), a state conviction for such a crime does not constitute an "aggravated felony," even where the convicting state labels it a felony. *Id.; see also Matter of K–V–D,* 1999 WL 1186808, 22 I & N Dec. at 1168–69 (continuing to apply the Hypothetical Federal Felony approach to state drug possession convictions, even in light of several circuits' differing interpretation

of section 924(c) in the criminal sentencing context).[1]

Among the circuits that have addressed this issue in the immigration context, the Second, Third, and Ninth Circuits have adopted the Hypothetical Federal Felony approach espoused by the BIA in the *Davis to K–V–D* line of cases. *See Cazarez–Gutierrez v. Ashcroft,* 382 F.3d 905 (9th Cir.2004); *Gerbier v. Holmes,* 280 F.3d 297 (3d Cir.2002); *Aguirre v. INS,* 79 F.3d 315 (2d Cir.1996). Providing an analysis of the relevant statutory text, legislative history, and invoking uniformity principles of immigration law, these circuits have held that the Hypothetical Federal Felony approach is the appropriate method for determining whether a state drug conviction is an "aggravated felony" under the INA.

### 2. State Felony Approach

During this same period of time, several circuit courts had occasion to interpret the "aggravated felony" term as it applied to state drug offenses in the criminal sentencing context. *See, e.g., United States v. Ibarra–Galindo,* 206 F.3d 1337 (9th Cir. 2000); *United States v. Simon,* 168 F.3d 1271 (11th Cir.1999); *United States v. Hinojosa–Lopez,* 130 F.3d 691 (5th Cir.1997); *United States v. Briones–Mata,* 116 F.3d 308 (8th Cir.1997); *United States v. Cabrera–Sosa,* 81 F.3d 998 (10th Cir.1996); *United States v. Restrepo–Aguilar,* 74 F.3d 361 (1st Cir.1996); *United States v. Polanco,* 29 F.3d 35 (2d Cir.1994).

At issue in the sentencing guidelines cases was the fact that a district court could enhance the sentence of a defendant who has unlawfully reentered the United States if he had been previously deported after a conviction for an "aggravated felony." In order to properly determine

---

**1.** See further discussion on this issue in the    following section.

whether to enhance a defendant's criminal sentence, a court had to initially decide the proper definition of "aggravated felony." Like Section 101 of the INA, which we analyze today for immigration purposes, the U.S. Sentencing Guidelines define "aggravated felony" for sentencing purposes by reference to the definition in 18 U.S.C. § 924(c). Section 924(c), as previously mentioned, in turn, references "any felony punishable under the Controlled Substances Act," and the two other acts not pertinent to our present discussion. All circuits addressing this question have held that, in the criminal sentencing context, a state drug possession crime is an aggravated felony if it is both punishable under the CSA and labeled as a felony by the convicting state, without regard to whether the crime would be punishable under federal drug laws as a felony or only as a misdemeanor.[2]

The First Circuit in *Restrepo–Aguilar* and later the Ninth Circuit in *Ibarra–Galindo*, espousing much of the same reasoning, provided perhaps the most detailed analyses in favor of this "State Felony" approach. In *Restrepo–Aguilar*, the First Circuit began with the text of 18 U.S.C. § 924(c)(2). Looking to the wording of section 924(c)(2) that " 'drug trafficking' means any felony punishable under the Controlled Substances Act," the court held that the statutory definition "plainly does not require that an offense, in order to be a drug trafficking crime, be subject to a

particular magnitude of punishment if prosecuted under the CSA." 74 F.3d at 364. The court then relied upon 21 U.S.C. § 802(13), which is part of the definitional section of the CSA and defines felony as "any Federal or State offense classified by applicable Federal or State law as a felony." *Id.* The court then looked "[b]eyond purely textual considerations," finding that its result is "most consistent with the approach favored by the Sentencing Guidelines," which, as a policy, treats violations of state law on par with violations of federal law. *Id.* at 365. In particular, the court noted that the commentary to the Guidelines specifically state that the aggravated felony enhancement applies to prior offenses, "whether in violation of federal or state law." *Id.* at 365–66 (citing U.S.S.G. § 2L1.2 comment n. 7). Significantly, referencing the recent BIA case *In re L–G*, the First Circuit distinguished the BIA's differing interpretation of the same language for immigration proceedings because "the relevant context was different." *Id.* at 366. The court explicitly left open the question of whether "aggravated felony" could be interpreted differently for the purposes of immigration matters than for sentencing enhancement. *Id.* at 367 n. 10.[3]

Following the several circuit court decisions adopting the State Felony approach in the sentencing context, in 1999 the BIA revisited its interpretation of "aggravated felony" in the immigration context. *See*

---

2. *Ibarra–Galindo*, 206 F.3d at 1339–41; *Simon*, 168 F.3d at 1272; *Hinojosa–Lopez*, 130 F.3d at 694; *Briones–Mata*, 116 F.3d at 309–10; *Cabrera–Sosa*, 81 F.3d at 1000; *Restrepo–Aguilar*, 74 F.3d at 364–67; *Polanco*, 29 F.3d at 38. We note that the Ninth Circuit's opinion in *United States v. Ibarra–Galindo* was accompanied by a strong dissent by Judge Canby, portions of which have been adopted and expounded upon by the Third Circuit in support of adopting the Hypothetical Federal Felony approach in the immigration context. *Gerbier v. Holmes*, 280 F.3d at 308–09.

3. This dichotomous approach has since been adopted by the Second and Ninth Circuits. Adopting a different interpretation of "aggravated felony" in the immigration context than is used in the criminal sentencing context, the Second and Ninth Circuits now use the Hypothetical Federal Felony approach in immigration cases and the State Felony approach in criminal sentencing cases. *See United States v. Pornes–Garcia*, 171 F.3d 142, 147–48 (2d Cir.1999); *Cazarez–Gutierrez*, 382 F.3d 905, 911 (9th Cir.2004).

*In re K–V–D,* 22 I & N Dec. 1163. Finding that the circuit decisions regarding criminal sentencing did not control the interpretation of "aggravated felony" for immigration purposes, and finding its own interpretation most consistent with principles of uniformity central to applying immigration law, the BIA upheld its Hypothetical Federal Felony approach in the immigration context. The Fifth Circuit is the only circuit thus far that has applied the State Felony approach used in the sentencing cases to the immigration context. *United States v. Hernandez–Avalos,* 251 F.3d 505, 508–10 (5th Cir.2001) (extending its holding in *Hinojosa–Lopez* in the sentencing context to a case involving deportation of an immigrant, stating, "[w]e fail to see the validity of interpreting this statute differently based on the distinction between sentencing and immigration cases.").[4]

In 2002, after the Fifth Circuit's decision in *Hernandez–Avalos,* in *In re Yanez–Garcia,* the BIA reversed its long-standing interpretation of "aggravated felony," over the dissent of two Board Members. 23 I & N Dec. at 391. The BIA now defines "aggravated felony" for the purposes of immigration based upon the definition given by the relevant circuit. *Id.* Thus, in the Fifth Circuit, for example, the BIA will use the State Felony approach, and in the Third Circuit it will use the Hypothetical Federal Felony approach. Significantly, after *Yanez–Garcia,* the BIA will apply the rule a circuit has adopted in the criminal sentencing context to the immigration context, if it has not spoken on the issue for immigration purposes, and in circuits where an approach has not been adopted in either the sentencing or immigration context, the BIA will apply the State Felony approach. *See id.* at 396–98 (withdrawing from its decisions in *Matter of K–V–D,* and *In re L–G* and *Matter of Davis* to the extent they are inconsistent). The BIA indicated four reasons for reversing its position, including (1) that a "solid majority" of the circuits had adopted the State Felony approach; (2) the "majority interpretation" is logical and coherent based on the statutory language; (3) the Hypothetical Federal Felony approach is difficult to apply in practice; and (4) the Attorney General had not espoused a different interpretation in the context of federal criminal prosecutions. Thus, in all circuits except the Second, Third, and Ninth, the BIA now applies the State Felony approach in immigration proceedings.

■ This issue is a matter of first impression here as the Seventh Circuit has yet to decide whether to adopt the Hypothetical Federal Felony approach or the State Felony approach in either the sentencing context or the immigration context for state drug felonies that would be punishable only as misdemeanors under federal law. *See Yanez–Garcia,* 388 F.3d at 282. Because the Seventh Circuit had not spoken on the issue, and because the case fell within the Seventh Circuit's jurisdiction, in *Yanez–Garcia,* the BIA analyzed the defendant's case using the State Felo-

---

4. In an earlier case involving criminal sentencing, the Ninth Circuit suggested that it may adopt the State Felony approach in both the sentencing and immigration context. *See United States v. Ibarra–Galindo,* 206 F.3d 1337, 1340 n. 2 (9th Cir.2000) (after adopting the State Felony approach for sentencing, stating, "we have never even suggested that we would interpret 18 U.S.C. § 924(c)(2) differently in applying the Immigration and Na-

tionality Act than we now interpret it in applying the Sentencing Guidelines."). In later cases, however, the Ninth Circuit adopted the dichotomous approach also now taken by the Second Circuit, using the Hypothetical Federal Felony approach in immigration cases and the State Felony approach for criminal sentencing. *See Cazarez–Gutierrez,* 382 F.3d at 911; *Ferreira,* 382 F.3d 1045, 1050 (9th Cir. 2004).

ny approach. 23 I & N Dec. at 398. As we previously mentioned, however, the BIA's decision was based upon its interpretation of a provision in the federal criminal law and, therefore, is not entitled to deference. *Id.* at 396–97. Based upon our review of the statutory language at issue, legislative history, and in light of the principles of uniformity and equity central to immigration law, we now adopt the Hypothetical Federal Felony approach taken by the Second, Third, and Ninth Circuits.

## C. Statutory Language

■ The starting point of any statutory construction is, of course, the language employed by Congress, and it is assumed that its plain meaning accurately expresses the legislative purpose. *Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 122 (7th Cir.1997). At the same time, "statutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Thus, in determining whether the meaning of statutory language is plain or ambiguous, we look not only to the specific language at issue, but also the context in which the language is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir.2004).

The particular language at issue in this case is in 18 U.S.C. § 924(c), which provides that a " 'drug trafficking crime' includes any felony punishable under the Controlled Substances Act." In the immigration context, only the Fifth Circuit has held that this language is clear. *See United States v. Hernandez–Avalos*, 251 F.3d at 509 ("[T]he statutory language is clear—and is the same—whether applied in sentencing or immigration cases. We agree that the plain language of the statutes indicates that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the CSA.") (internal citation omitted). As applied to the sentencing context, however, a few other circuits have held that this language clearly includes any offense that is punishable under the CSA and is a felony, as the offense is categorized by the convicting forum. *See, e.g., Ibarra–Galindo*, 206 F.3d at 1339 (9th Cir.2000) ("If Congress had intended the meaning advanced by Ibarra–Galindo, it would have most naturally referred to offenses "punishable as felonies under the Controlled Substances Act, but it did not."); *United States v. Restrepo–Aguilar*, 74 F.3d at 364 ("The statutory definition plainly does not require that an offense, in order to be a drug trafficking crime, be subject to a particular magnitude of punishment if prosecuted under the CSA, as defendant's preferred reading would suggest. Rather, the definition requires only that the offense be a 'felony punishable' thereunder."). These State Felony circuits find further support for their position by looking to 21 U.S.C. § 802(13), a provision of the CSA, under which felony is defined as "any Federal or State offense classified by Federal or state law as a felony." *See, e.g., Restrepo–Aguilar*, 74 F.3d at 364. On the other hand, the Third Circuit has explicitly held that it finds the statutory language to be ambiguous. *See Gerbier v. Holmes*, 280 F.3d at 309 ("[W]e do not agree that the language here has such an obvious meaning"). We agree with the Third Circuit that the language at issue does not have such a clear meaning. As we look at the language "any felony punishable under the CSA," we find that

although it could be interpreted in the manner suggested by the State Felony circuits, this provision could logically and consistently be read to include only those state drug offenses that would punishable as felonies under federal drug laws.

We also agree with the Third Circuit in rejecting the contention that the language in 21 U.S.C. § 803(13) confirms the "clear" meaning. It is true that 21 U.S.C. § 803(13) defines felony as "any Federal or State offense classified by applicable Federal or State law as a felony." However, section 924(c) does not direct us to any particular provision of the CSA for defining "felony punishable under." As explained by the Third Circuit, § 802(13) does not appear to be the proper provision of the CSA to reference because it does not define any substantive offense under the CSA, but rather defines felony for the purpose of sentencing enhancements for the substantive crimes set forth in Chapter 21. *See Gerbier*, 280 F.3d at 309 (citing, as an example, 21 U.S.C. § 841(b)(1), which raises the sentence for a conviction under the provision if the violation occurs after a prior conviction for a felony drug offense); *see also In re L–G*, 21 I & N Dec. at 99 ("[A] review of the Controlled Substances Act reveals that the term felony is generally used there for purposes other than to describe offenses that are punishable under its provisions. . . . Specifically, the term 'felony' is primarily used in 21 U.S.C. § 802(13) to trigger statutory sentence enhancement for repeat offenders.").[5] The more appropriate provisions to look to, as suggested by the Third Circuit and the BIA in *In re L–G*, before it reversed its position, appear to be the *substantive* provisions of the CSA, which define the pun-

ishable drug offenses, and 18 U.S.C. § 3559(a), which provides the general sentencing classification of offenses. Under 18 U.S.C. § 3559(a), a felony is defined as an offense for which the term of imprisonment exceeds one year. Because simple drug possession is not punishable by more than a year under the CSA in 21 U.S.C. § 844(a), looking to those provisions instead of 21 U.S.C. § 803(13) suggests a different reading than that espoused by the State Felony circuits. At the very least, we find that 21 U.S.C. § 803(13) does not provide us with a clear meaning of section 924(c)'s "any felony punishable under the CSA," in light of the other equally, if not more, relevant provisions of the CSA and criminal law; nor does section 924(c) direct us to any particular provisions of the CSA over others in clarifying its terms. Finding ambiguity in the relevant statutory provisions, we look to the legislative history and principles guiding statutory construction to determine the meaning of the statute.

### D. Legislative History

As has been previously and extensively discussed by the Third Circuit in *Gerbier v. Holmes* and the Ninth Circuit in *Cazarez–Gutierrez*, the history of section 924(c) supports an interpretation of "any felony punishable under the Controlled Substances Act" that includes state drug offenses only if they would be punishable as felonies under federal drug law. Until 1988, section 924(c)(2) defined "drug trafficking" as "any felony violation of Federal law involving distribution, manufacture, or importation of any controlled substance." The 1988 amendment was labeled by Congress as a "clarification of definition of

---

5. As the Third Circuit noted, there is only one instance under the CSA where the term "felony" is used to describe a punishable substantive offense, rather than to trigger a sentence enhancement, and as used in that provision, only a felony under federal law qualifies as punishable under the provision. *See Gerbier*, 280 F.3d at 310 (discussing 21 U.S.C. § 843(b)).

drug trafficking crimes in which use or carrying of firearms and armor piercing ammunition is prohibited." Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 6212, 102 Stat. 4181 (1988). The 1988 amendment changing the language to "any felony punishable under the Controlled Substances Act" was not intended to change the fact that the felony violation must be of federal, and not state law. Rather, as the Congressional Record indicates, the amendment was intended to make clear that "drug trafficking crime" would include the above-mentioned firearm and armor piercing offenses, as well as "possession with intent to distribute, or attempt and conspiracy violations," all of which were are not covered in the pre–1988 formulation of section 924(c), but were covered under the CSA. 134 Cong. Rec. S17360, S17363 (Section Analysis of Judiciary Comm. Issues in H.R. 5210 by Sen. Biden) (1988); Pub.L. No. 100–690, § 6212; *see generally Cazarez–Gutierrez,* 382 F.3d at 915. Senator Biden, who was chairman of the Senate Judiciary Committee and a principal drafter of the Act, stated that the amendment "clarifies the scope of 18 U.S.C. §§ 924(c) and 929(a)." 134 Cong. Rec. at S17363. Thus, the changes made in 1988 as now codified in section 924(c) were never intended to broaden the provision's scope to include state offenses, but rather to simply clarify the scope in terms of the *types* of federal crimes included.

At the same time, the "aggravated felony" provisions were first introduced into the INA. "Aggravated felony" for immigration purposes was defined as "murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States." *See Cazarez–Gutierrez,* 382 F.3d at 915 (discuss-

ing Pub.L. No. 100–690 § 7342). Before the Senate began voting on this legislation, Senator D'Amato, a proponent of the immigration provisions described the additions as "focusing on a particularly dangerous class of 'aggravated alien felons,' that is, aliens convicted of murder, and drugs and firearms trafficking." *See Cazarez–Gutierrez,* 382 F.3d at 915–16 (discussing 134 Cong. Rec. S17301, S17318 (1988)). Thus, by amending the INA, the 1988 legislation sought only to exclude the most dangerous class of felons and did not seek to broaden the class to encompass minor state drug offenders.

Congressional amendments made in 1990 lend further support for the proposition that Congress did not intend to include state convictions for minor drug possession as aggravated "felonies" and, in fact, approved of the Hypothetical Federal Felony approach to dealing with state drug offenses. At that time, Congress broadened the definition of aggravated felony to include "any illicit trafficking in any controlled substance" in addition to drug trafficking crimes. Immigration Act of 1990, Pub.L. No. 101–649 § 501, 104 Stat. 4978 (1990). Congress also added the provision that "aggravated felony includes offenses ... whether in violation of Federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years." *Id.* The legislative history indicates that this provision was clearly intended to codify the BIA's decision the same year in *Matter of Barrett,* which, as previously discussed, had adopted the Hypothetical Federal Felony approach in dealing with state convictions for drug trafficking. *See* 20 I & N Dec. 171.

Prior to *Barrett,* it was unclear whether state convictions, or only federal con-

victions, were subject to the aggravated felony provision of the INA. ·Noting that Congress did not intend "to differentiate between aliens convicted of similar drug-related offenses on the basis of whether the conviction was accomplished under state or federal law," the Board adopted the Hypothetical Federal Felony approach to find that state convictions for drug trafficking crimes are aggravated felonies if they would be punishable as felonies under the federal drug laws. *Id.* at 177–78.

In adopting the 1990 amendments, the House Judiciary Committee stated, "Current law clearly renders an alien convicted of a Federal drug trafficking offense an aggravated felon. It has been less clear whether a state drug trafficking conviction brings that same result, although the Board of Immigration Appeals in *Matter of Barrett* (March 6, 1990) has recently ruled that it does. Because the Committee concurs with the recent decision of the Board of Immigration Appeals and wishes to end further litigation on this issue, section 1501 of H.R. 5269 specifies that drug trafficking (and firearms/destructive device trafficking) is an aggravated felony whether or not the conviction occurred in state or Federal court." H.R.Rep. No. 101–681 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6553. Based on this history, we see no indication that the 1990 amendments were intended to include offenses classified by the state as felonies but punishable only as misdemeanors under federal law; rather, Congress approved of the approach the BIA had taken in *Barrett,* and the one we adopt today, in comparing state drug offenses to their federal analog to determine whether an "aggravated felony" had been committed.

Following the BIA's extension of the rule established in *Barrett* in *Davis, L–G,* and most recently in *K–V–D,* Congress made no changes to the aggravated felony provisions that disputed or called into question those rulings. It is an established principle of statutory construction that Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change. *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The presumption is particularly appropriate where Congress exhibited both a detailed knowledge of the incorporated provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation. *Id.* at 581, 98 S.Ct. 866. Furthermore, Congress is not presumed to change well-established legal precedent by silence. *American Hosp. Ass'n v. NLRB,* 499 U.S. 606, 613–14, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991).

Congress had notice of the BIA's interpretation beginning in 1990, with the BIA's decision in *Matter of Barrett,* 20 I & N Dec. 171. Indeed, as discussed above, Congress expressly approved of the *Barrett* decision and sought to codify its holding in its 1990 amendments. After the BIA's decisions in *Matter of Davis,* 20 I & N Dec. 536, and *In re L–G,* 21 I & N Dec. 89, Congress was well-aware of the BIA's extension of *Barrett* in interpreting "aggravated felony" by using the Hypothetical Federal Felony approach. In 1996, Congress in fact made many significant changes to immigration law when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), including substantially broadening the list of crimes defined as aggravated felonies. *See* H.R. Conf. Rep. No. 104–828 (1996).

During this time, Congress had occasion to specifically examine BIA precedents, including those dealing with the aggravated felony provisions. In doing so, Congress specifically singled out BIA interpretations

of which it disapproved. For example, Congress amended language in the aggravated felony provision to broaden the scope of the definition of "conviction." The House Conference Report explicitly stated that its amendment was to "overturn administrative rulings," which held that where a sentence is not actually imposed (because the state allows deferred adjudication, for example), there has been no conviction for the purposes of this provision. *See id.* The Conference Report then mentioned two specific BIA cases it sought to overturn by this amendment. *See id.* Despite significant amendments to the INA, including to the "aggravated felony" provisions, Congress did not object to the BIA's reasoning in *In re L–G* and did not modify Section 101(a)(43)(B) of the INA. *See Matter of Yanez–Garcia,* 23 I & N Dec. at 404–07 (Rosenberg dissenting).

In sum, legislative history indicates that: (1) in adopting the particular language "any felony punishable under the CSA" in section 924(c), Congress sought to include within its scope certain *federal* firearms, attempt, and conspiracy crimes, but not to include *state* felonies; (2) in including the aggravated felony provisions in the INA, Congress sought to exclude "a particularly dangerous class of 'aggravated alien felons;'" (3) that Congress approved of the Hypothetical Federal Felony approach as applied by the BIA in *Matter of Barrett;* and (4) that, perhaps most significantly, Congress did not act to change the well-established *Barrett* precedent after it was applied by the BIA in *Davis* and *L–G,* despite making other significant changes in the specific area and singling out other BIA rulings of which it disapproved. Based upon this legislative history, especially when considered in light of immigration law's long-standing principles of uniformity and equity discussed more fully below, we cannot find that Congress intended for minor drug possession convictions considered felonies by state law but not under federal standards to be included as "aggravated felonies."

## E. Uniformity and Equity

The uniformity requirement in immigration law is rooted textually in the Constitution's Naturalization Clause, which directs Congress "[t]o establish a uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. Although there is no clearly established doctrine concerning this provision, the Supreme Court has emphasized the importance of uniformity in immigration law throughout the years. In an 1875 case involving a state alien registration law, the Court struck down a state alien registration law because the regulation of immigration requires "a uniform system or plan. The laws which govern the right to land passengers in the United States from other countries ought to be the same in New York, Boston, New Orleans, and San Francisco." *Henderson v. Mayor of New York,* 92 U.S. 259, 273, 92 U.S. 259, 23 L.Ed. 543 (1875). In the 1941 case *Hines v. Davidowitz,* the Court again took on the topic of state alien registration laws. It stressed the crucial role that uniformity in immigration, naturalization, and deportation plays in preserving international relations and providing consistent and fair treatment of non-citizens. 312 U.S. 52, 66, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The Court stated that "the treatment of aliens, in whatever state they may be located, [is] a matter of national moment." *Id.* at 73, 61 S.Ct. 399. The Court observed approvingly that Congress, by seeking "to protect the personal liberties of law-abiding aliens through one uniform national registration system," had acted in accord with the Constitution's Naturalization Clause. *Id.*

In *Graham v. Richardson,* a more recent case in the related context of non-citizens' access to government benefits, the Supreme Court invoked the uniformi-

ty principle of immigration, when it stated, "Congress' power is to 'establish a uniform Rule of Naturalization.' A congressional enactment construed so as to permit state legislatures to adopt divergent laws on the subject of citizenship requirements for federally supported welfare programs would appear to contravene this explicit constitutional requirement of uniformity." [6] 403 U.S. 365, 382, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The principle of uniformity in immigration has also been invoked by courts as a matter of equity. In *Francis v. INS*, the Second Circuit stated, "Fundamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner." 532 F.2d 268, 273 (2d Cir. 1976). Thus, over the years, the uniformity principle has played a central role in immigration, including in construing and evaluating the validity of immigration statutes. *See generally* Iris Bennett, The Unconstitutionality of Nonuniform Immigration Consequences of "Aggravated Felony" Convictions, 74 N.Y. L.Rev. 1696, 1705–15 (Dec.1999) (cited in *Solorzano–Patlan v. INS*, 207 F.3d 869, 874 (7th Cir.2000)).

The Seventh Circuit, for its part, has also espoused the principle of uniformity in the application of immigration laws, and, in particular, in the application of the "aggravated felony" provisions of the INA. *See United States v. Martinez–Garcia*, 268 F.3d 460, 465 (7th Cir.2001) ("In determining whether a criminal conviction falls within one of the statutory predicate offenses designated as aggravated felonies by Congress, the uniform application of federal law requires that we identify and apply the "generic" elements of the felonious activity involved, rather than the in-consistent titles, elements and definitions used in the statutes of the various states."); *Solorzano–Patlan v. INS*, 207 F.3d at 874 (holding that "the need for a uniform interpretation" of 'burglary'" as an aggravated felony is "great" in applying the INA); *see also Karapetian v. INS*, 162 F.3d 933, 937 (7th Cir.1998) (citing *In re Cerna*, 1991 WL 353528, 20 I & N Dec. 399 (BIA 1991) approvingly for the proposition that "[A] principal mission of the Board of Immigration Appeals is to ensure as uniform an interpretation and application of this country's immigration laws as possible.").

In *Solorzano–Patlan*, for example, the Seventh Circuit examined the question of whether the term "burglary offense," included in the list of aggravated felonies for immigration deportation purposes, should be defined by the convicting state's statute or by a categorical definition, which would apply across jurisdictions. Significant to the court's analysis was the fact that an interpretation that relied upon the state's statutory scheme would result in disparate application between jurisdictions. For example, the court noted that in Illinois law, under which Solorzano–Patlan was charged and pled guilty, the statute classifies his crime as a "burglary," whereas his same crime would have been classified as a "theft," had he been convicted in Indiana. Thus, to adopt an approach which looked to state definitions would mean that the plaintiff would be subject to deportation under the burglary provision in Illinois, but not in Indiana. The court further noted that in Wisconsin, the plaintiff's same crime would have been considered only a misdemeanor theft and he would not have been subject to deportation under any provision in Wisconsin. In rejecting

---

**6.** The Court's holding in *Graham* was based upon equal protection; however, we find that its statements regarding the uniformity principle in immigration are of particular relevance to its importance in immigration law as a whole and to our present case.

the state definition approach and adopting the categorical approach, the court held that "Congress did not intend to rely solely on the respective jurisdictions' definition of criminal conduct." *Id.* at 874.

A year and a half later, in *Martinez–Garcia*, the Seventh Circuit addressed a similar question in construing an "attempt" to commit a theft, as it is used in the INA's aggravated felony provision. In adopting a uniform definition of attempt that is "unconstrained by the titles, definitions or elements assigned to it by the various states," the court noted that "reliance upon the varying state laws would inevitably lead to inconsistent results in the interpretation of the INA, as we made clear and condemned in *Solorzano–Patlan.*" 268 F.3d at 465.

Before its reversal in *In re Yanez–Garcia*, central to the BIA's reasoning for using the Hypothetical Federal Felony approach for state felony drug offenses was the need for a uniform rule in the immigration context. As the BIA stated in *Matter of K–V–D*, "[the Hypothetical Federal Felony approach] is entirely consistent with and meaningfully effectuates uniformity. To hold otherwise would result in widely disparate consequences for similarly situated aliens based solely on differing state classifications of identical drug offenses. We do not believe that such a result was intended by Congress." 1999 WL 1186808, 22 I & N Dec. at 1174. The principles of uniformity and equity were central to the Third and Ninth Circuit's decisions to adopt the Hypothetical Federal Felony approach within their jurisdictions, even though this meant adopting a different interpretation, for the Ninth Circuit, than it had adopted in sentencing context. *See Cazarez–Gutierrez*, 382 F.3d at 918 ("[L]ike the Second and Third Circuits, we conclude that widely disparate immigration consequences due to differences in how states punish drug offenses 'cannot be what Congress intended in establishing a 'uniform' immigration law.' ") (quoting *Gerbier*, 280 F.3d at 312).[7]

Within our own Circuit, inequitable treatment in the context of state drug possession convictions, is not merely conjecture, but is a very real possibility. For example, first time possession of cocaine, the crime Gonzales–Gomez was convicted of, is considered a felony in Illinois. *See* 720 ILCS 570/402(a). However, the same crime in Wisconsin is considered a misdemeanor, punishable by up to one year in the county jail. *See* WI Stat. § 961.41(3g)(c). Thus, were we to adopt

---

7. We realize that our holding today may mean interpreting the same statutory language differently in the immigration context than in criminal sentencing, as it has in the Second and Ninth Circuits. *See Hernandez–Avalos*, 251 F.3d at 509 (rejecting uniformity arguments by noting that the Hypothetical Federal Felony approach creates a dichotomy between the application of section 924(c) in immigration proceedings and sentencing proceedings). However, at this point we are not concerned with such a possibility.

Although as a general matter, the same language appearing in different portions of an act is taken to have the same meaning in each, there are exceptions to the rule. *See Pornes–Garcia*, 171 F.3d at 147 (citing several cases where the same word or phrase is given

different meanings in different sections of the same statute). In this case, the very different contexts and policies of criminal sentencing, as compared to immigration, justifies interpreting the same term differently in the different contexts incorporating the term. *See id.; see also Cazarez–Gutierrez*, 382 F.3d at 913 (contrasting criminal sentencing, in which States possess primary authority and, therefore, there is no strong policy for uniformity, with immigration, where, as a federal power, the need for national uniformity is paramount.)

Furthermore, we do not today adopt a rule that construes the same language differently in the immigration case than in the sentencing context, as the sentencing issue has not yet been decided by our Circuit.

the State Felony approach, Gonzales–Gomez would be precluded from relief from removal in this state, Illinois, but would have been permitted to apply for relief from removal in Wisconsin, a neighboring state. Given the long-standing principle in construing immigration law in favor of uniformity, as evidenced by Supreme Court holdings, other circuit decisions, and decisions within our own circuit, we cannot read section 924(c) to represent Congress' intent to codify such disparate treatment of aliens across jurisdictions.

Applying to Hypothetical Federal Felony approach to our instant case, we find that under the federal analog, Gonzales–Gomez is guilty of a simple possession of a controlled substance under 21 U.S.C. § 844. That crime is categorized as a misdemeanor under federal law because it is punishable by up to one year in prison. *Id.*, 18 U.S.C. § 3559(a). Because Gonzales–Gomez's crime does not constitute an aggravated felony, he was eligible to apply for cancellation of removal under 8 U.S.C. § 1229(b)(a)(3), and the immigration judge and the BIA erred in finding Gonzales–Gomez ineligible for such relief.

## CONCLUSION

For the reasons stated above, Gonzales–Gomez's petition for a writ of habeas corpus is granted. We return this matter to the agency, so that Gonzales–Gomez may submit an application for cancellation of removal. It is so ordered.